UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § § § | |
| *Plaintiff,* | § § | |
| *v.* | § § § | Civil Action No.  SA-16-CV-843-XR |
| AIH ALAMO ICE HOUSE, LLC, ET AL., | § § § | |
| *Defendants.* | § § | |

**ORDER**

On this date, the Court considered Cross-Defendant Michael Brooks Kieschnick's Motion to Disqualify Daniel Rutherford, Tyler Rutherford, and the Rutherford Law Firm, counsel for Cross-Plaintiffs AIH Alamo Ice House, LLC, Jaime Luis Gonzales, and Raymond Fuchs. After careful consideration, the Court GRANTS the motion.

**BACKGROUND**

Plaintiff Joe Hand Promotions, Inc. filed its original complaint on August 24, 2016, naming Kieschnick, AIH, Gonzales, and Fuchs as defendants. Docket no. 1. The basic allegation of the complaint is that Plaintiff holds the exclusive right to license and distribute certain pay-per-view sporting events, which commercial establishments must license in order to broadcast at their facilities. *Id*. at 4–6. Plaintiff alleges that Defendants broadcasted one of these events, a November 2015 boxing match, at a bar without authorization or license from Plaintiff. *Id*. at 4–6. Defendant AIH is the bar itself, and the individuals named own the establishment. *Id*. at 2–3.

AIH, Gonzales, and Fuchs filed a cross-claim against Kieschnick, alleging that Kieschnick offered to obtain the fight on his personal TV receiver, bring that receiver to the bar,

and broadcast the fight there from that receiver. *Id.* at 3. Cross-plaintiffs allege that they did not know this was illegal and that Kieschnick obtained a broadcast of the fight illegally. *Id.*

On November 11, Kieschnick filed a motion to disqualify Cross-Plaintiffs' counsel, Daniel Rutherford, Tyler Rutherford and the Rutherford Law Firm (collectively "Rutherford"). Docket no. 13. Kieschnick argues that prior to the filing of this lawsuit, Rutherford negotiated a non-finalized settlement agreement between Plaintiff and all defendants, including both Kieschnick and the cross-plaintiffs.[1] *Id.* at 3. Kieschnick argues that in response to a demand letter he received from Plaintiff regarding the broadcast of the same fight at issue in this lawsuit, he attended a January 2016 meeting with Daniel and Tyler Rutherford. *Id.* at 5. This meeting was organized either by cross-plaintiff Jaime Gonzales or his wife, Maralessa, both of whom attended the meeting as well. *Id.* At the meeting, Rutherford discussed a plan for resolving the case, and shortly after the meeting, presented Plaintiff with a non-finalized settlement agreement, which included a release of Kieschnick's liability. *Id.* This agreement was circulated between Rutherford, Gonzales, and Kieschnick. *Id.* Rutherford also emailed Plaintiff's prior counsel regarding payment terms and instructions. *Id.*

On  December 7, Daniel Rutherford filed a response, accompanied by a motion for leave to file a late response.[2] His description of the January 2016 meeting gives more details but is mostly consistent with Kieschnick's description. *Id.* at 1–2. The biggest difference between the descriptions is that Daniel Rutherford makes no mention of Tyler Rutherford being present at this meeting. *Id.* Otherwise, Rutherford states that

> [a]t no time did the parties engage in any conversation or discussion as to the merits of the case. The only two things discussed was [sic] whether or not the fight was shown to the patrons and whether or not a commercial permit had been

---

[1] The record does not indicate what happened to this prior settlement agreement, though it appears to have fallen though, resulting in this lawsuit.

[2] Rutherford's motion for leave is granted.

obtained. On the basis of those statements all parties agreed that it was in their best interest to simply settle the case for a reasonable sum of money . . . Daniel Rutherford then negotiated a settlement of the case with prior counsel for Plaintiff and after having successfully negotiated an extremely attractive settlement the papers for the settlement were delivered to Jaime Gonzales with instructions to return to the office with all the papers signed and the money so that it could be forwarded to prior counsel for Plaintiff.

*Id.* at 2. This being the extent of his relationship with Kieschnick, Rutherford argues that "at no time did [Kieschnick] come to [him] in good faith to retain [him] in this matter." *Id.*

## DISCUSSION

### I.   Governing Law and Legal Standard

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In gleaning sources of federal law to govern this analysis, federal district courts "should first look to the local rules promulgated by the local court itself." *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). The Local Rules require all attorneys practicing before this Court to "comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." LOCAL RULE AT-7. The Texas Disciplinary Rules of Professional Conduct provide:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
(1) in which such other person questions the validity of the lawyer's services or work product for the former client;
(2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
(3) if it is the same or a substantially related matter.
(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09.[3]

Under the Substantial Relationship Test of the Fifth Circuit, which has applied the Texas Rules and ABA Rules to cases involving prior representations, "[a] party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).

An attorney–client relationship "depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). Such a contract "may exist merely as a result of an offer or request made by the client and an acceptance or assent thereto by the attorney," and does not depend upon the payment of a fee. *Id.* (quoting *State v. Lemon*, 603 S.W.2d 313, 318 (Tex. App.—Beaumont 1980, no writ). Both parties "must understand and mutually agree to the nature of the work to be undertaken." *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 364 (5th Cir. 1999) (quoting *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied)).

## II.     Application

There is little doubt that Kieschnick satisfies the second prong of the Substantial Relationship test—"a substantial relationship between the subject matter of the former and present representations." His motion makes clear that any involvement he had with Rutherford

---

[3] The Texas Rules "are not the sole authority governing a motion to disqualify." *See ProEducation*, 587 F.3d at 299–300. The parties, however, have not identified other particular sources of law to guide the Court in addressing the relevant ethical standards. Furthermore, the Texas Rule and its equivalent from the ABA Model Rules—Rule 1.9(a)—have been interpreted as having "some linguistic differences" but "[producing] the same result in application." *One World Foods, Inc. v. Stubb's Austin Rest. Co. LC*, A-15-CA-1071-SS, 2016 WL 6242121, at *4 (W.D. Tex. Oct. 25, 2016) (quoting *ProEducation*, 587 F.3d at 301). Accordingly, the Court finds that Rule 1.09 provides sufficient guidance for this analysis.

through the January 2016 meeting was based on the same broadcast of the same November 2015 boxing match at issue in this lawsuit. Rutherford's response does not contest this issue.

The bulk of Rutherford's response is directed at the first prong of the Substantial Relationship test—whether there was "an actual attorney-client relationship between [Kieschnick] and the attorney he seeks to disqualify [Rutherford]." Rutherford argues that based on his characterization of the January 2016 meeting, there was never an attorney–client relationship because "[Kieschnick] did not seek him out and ask to be represented, did not disclose any confidentialities, did not agree upon any terms of representation, and only received a recommendation . . . to settle the case with out [sic] even considering the merits of the dispute." Docket no. 3. He also objects that Kieschnick's motion is based on factual assertions from Kieschnick's attorney, who lacks personal knowledge.

As an initial matter, the Court takes up Rutherford's objection to Kieschnick's evidence in support of its motion. Though the motion is drafted by his attorney, Kieschnick verified the motion, swearing to the facts set forth therein. Docket no. 13-1. Kieschnick also provided other evidence: (1) the demand letter sent from Plaintiff to the defendants that led to the January 2016 meeting, Docket no. 13-2; (2) the non-finalized settlement agreement that Rutherford admittedly negotiated[4] and that releases and discharges Kieschnick's liability, Docket no. 13-3; (3) a March 2016 email from Rutherford's assistant to Kieschnick with the proposed agreement attached, Docket no. 13-4; and (4) an email chain discussing various matters related to the settlement and indicating that Tyler Rutherford is the person for Kieschnick to contact with any questions, Docket no. 13-4. Aside from verifying his own motion, Rutherford provides no evidence. Docket

---

[4] *See* Docket no. 19 at 2 ("Daniel Rutherford then negotiated a settlement of the case with prior counsel for Plaintiff and after having successfully negotiated an extremely attractive settlement the papers for the settlement were delivered to Jaime Gonzales.")

no. 19 at 5. Based on the above, Kieschnick's motion is based on far more than hearsay and Kieschnick's attorney's knowledge, despite what Rutherford argues.

On the basis of the above, there was an attorney–client relationship between Rutherford and Kieschnick, satisfying the first prong of the Substantial Relationship test and warranting Rutherford's disqualification. While there may not have been a written contract memorializing the representation or the fee to be paid, Kieschnick attended a meeting with Rutherford to request Rutherford's legal advice, which Rutherford gave. *See* Docket no. 19 at 2. After this meeting, Rutherford further assented to this request for legal assistance by negotiating a settlement that released and discharged Kieschnick's liability. *See id.*; Docket no. 13-3. Kieschnick's conduct in attending the January 2016 meeting indicates that he agreed to the nature of the work to be undertaken, as does his receiving of emails regarding the subsequent settlement agreement negotiated by Rutherford. *See* Docket no. 13-4. Rutherford's conduct in recommending settlement at the meeting and then following through on his recommendations by negotiating the settlement, which included Kieschnick, reflect this same understanding of the relationship. *See* Docket no. 19 at 2. The Court accordingly finds that there was an attorney–client relationship in a substantially related matter arising from Kieschnick's January 2016 meeting with Rutherford and Rutherford's subsequent negotiation of a settlement agreement covering Kieschnick.[5] The Motion to Disqualify is therefore GRANTED and Rutherford[6] is disqualified.

---

[5] The fact that Kieschnick may not have revealed any client confidences to Rutherford in the course of the prior representation is immaterial; as the court in *In re Am. Airlines* explained, when two matters are "substantially related" under the meaning of Rule 1.09(a)(3), there is no requirement that client confidences be revealed. *In re Am. Airlines*, 972 F.2d at 614. This is because Rule 1.09(a)(2), an alternative route to disqualification, incorporates Rule 1.05 governing client confidences. *Id.* Similarly, the Rule contains no requirement of prejudice.

[6] This disqualification applies to David Rutherford, Tyler Rutherford, and the Rutherford Law Firm because Rule 1.09(b) imputes disqualification to members of the same law firm unless Rule 1.10 provides otherwise; Rule 1.10(b) does not permit lawyers practicing in the same law firm to undertake such a representation unless those lawyers were properly screened. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09. Rutherford has made no argument that any lawyers of the firm were properly screened.

**CONCLUSION**

Rutherford's Motion for Leave to Late File (Docket no. 19) is GRANTED. Kieschnick's Motion to Disqualify (Docket no. 13) is also GRANTED. Defendants and Cross-Plaintiffs Gonzales and Fuchs are hereby ORDERED to inform the Court whether they have obtained new counsel or intend to continue *pro se* by **January 17, 2017**; they are to notify the Court by this date if they desire to obtain counsel but are unable to do so by the deadline. As for AIH Alamo Ice House, LLC, in federal court, a corporation is not permitted to proceed *pro se*. The clear rule is that a corporation, as a fictional legal person, can only be represented by licensed counsel. *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984) (per curiam); *In re K.M.A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981). This is so even when the person seeking to represent the corporation is its president and major stockholder. *In re K.M.A.*, 652 F.2d at 399. This rule applies equally to LLCs as well as corporations. *Alfaro–Huitron v. WKI Outsourcing Sols.*, LLC, EP-14-CV-00159-FM, 2014 WL 12573321, at *2 (W.D. Tex. Sept. 29, 2014); *Parker v. Pro-W. Contractors, LLC*, CIV.A. 6:12-2679, 2013 WL 431046, at *3 (W.D. La. Feb. 1, 2013). Accordingly, the Court ORDERS Defendant and Cross-Plaintiff AIH Alamo Ice House, LLC to obtain legal counsel and cause them to enter an appearance before submitting any further filings in this matter. Should any of these parties require additional time to obtain counsel, they must notify the court on or before **January 17, 2017**.

It is so ORDERED.

SIGNED this 15th day of December, 2016.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE